IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTHONY L. THOMPSON,                )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )          Civil Action No. 3:16CV834–HEH
                                    )
DR. WIEDEMANN, *et. al,*            )
                                    )
        Defendants.                 )

## MEMORANDUM OPINION
### (Dismissing Defendant For Lack of Service and Granting Motion for Summary Judgment)

Anthony L. Thompson, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] Thompson contends that Defendants[2] denied him adequate dental care during his incarceration in the Greensville Correctional Center ("GCC"). The matter is before the Court on the Thompson's failure to serve Defendant Plapp and the Motion for Summary Judgment filed by Defendants Allen, Parker, Ray, Tapp, and Whitehead ("Defendants"). Defendants provided Thompson

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Thompson named as Defendants: Dr. Wiedemann, DDS; Dr. Plapp, DDS; R. Allen, a Dental Assistant; Dr. Velma Barnwell, DDS; K.L. Whitehead, Ombudsman; C. Parker, Assistant Warden; H.C. Ray, Health Services Grievance Coordinator (*see* ECF No. 17, at n.1); S. Tapp, Ombudsman; and D.Y. Kinsley, Law Librarian.

with the appropriate *Roseboro*[3] notice for their Motion for Summary Judgment. (ECF No. 43.) Thompson failed to file a response in opposition. The matter is ripe for disposition.

## I.    FAILURE TO SERVE DEFENDANT PLAPP

Under Federal Rule of Civil Procedure 4(m), Thompson had 90 days to serve Defendant Plapp. Here, that period commenced on April 18, 2017. By Memorandum Order entered on that date, the Court attempted to serve Defendants pursuant to an informal service agreement with the Attorney General's Office for the Commonwealth of Virginia. On May 22, 2017, the Attorney General responded that it would not accept process for Defendant Plapp. (ECF No. 17.) By Memorandum Order entered on December 5, 2017, the Court noted that more than ninety days had elapsed and nothing before the Court indicated that Thompson had completed service of process on Defendant Plapp. The Court ordered Thompson to show good cause, within eleven (11) days of the date of entry thereof, why the action against Defendant Plapp should not be dismissed without prejudice. On December 11, 2017, the Court received from Thompson a "Declaration" (ECF No. 50) in response, but he fails to show good cause for his failure to serve Defendant Plapp.

Rule 4(m) requires that, absent a showing of good cause, the Court must dismiss without prejudice any complaint in which the plaintiff fails to serve the defendant within the allotted 90–day period. Fed. R. Civ. P. 4(m). Courts within the Fourth Circuit found

---

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

good cause to extend the ninety-day time period when the plaintiff has made "reasonable, diligent efforts to effect service on the defendant." *Venable v. Dep't of Corr.*, No. 3:05cv821, 2007 WL 5145334, at *1 (E.D. Va. Feb. 7, 2007) (quoting *Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 528 (D. Md. 1999)). Thompson makes no showing of good cause for his failure to serve Defendant Plapp. Instead, Thompson simply states that because he is proceeding *in forma pauperis*, the Court should "arrange to effect service of process by summons to the defendants." (Decl. 1.) Thompson fails to provide any information demonstrating that he attempted to find an address for Defendant Plapp after the Attorney General's notice that they could not accept service on behalf of Defendant Plapp in May 2017. Neither Thompson's incarceration nor his *pro se* status is sufficient to establish good cause. *See, e.g., Hansan v. Fairfax Cty. Sch. Bd.*, 405 F. App'x 793, 794 (4th Cir. 2010) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 4352268, at *2 (E.D. Va. Sept. 16, 2011) (concluding that incarceration is not good cause or excusable neglect justifying a delay in service of process). Because Thompson fails to show that he made reasonable and diligent efforts to effectuate service on Defendant Plapp, his claims against Defendant Plapp will be dismissed without prejudice.

## II. SUMMARY OF CLAIMS AGAINST DEFENDANTS

By Memorandum Opinion and Order entered on December 14, 2017, the Court

dismissed Claims One and Two against Defendants Barnwell and Wiedemann. (ECF

Nos. 52, 53.)[4] The following Eighth Amendment claims remain:[5]

| | |
|---|---|
| Claim Four: | Defendant Whitehead denied Thompson adequate medical care when she "generated the report for the grievance concerning the infected tooth" without investigating his dental history. (Compl. Attach. 9–10.) |
| Claim Five: | Defendant Parker denied Thompson adequate medical care when she denied a grievance as unfounded without any investigation. (*Id.* at 10.) |
| Claim Six: | Defendant Ray denied Thompson adequate medical care by denying a Level II response as unfounded because she "should have been aware of the serious medical need Plaintiff presented during the grievance process." (*Id.*) |
| Claim Seven: | Defendant Tapp denied Thompson adequate medical care by signing a grievance Thompson submitted and she "was made aware of the serious medical need of Plaintiff upon signing the grievance." (*Id.*) |

Thompson fails to identify a claim against Defendant Allen in his section, "LEGAL

CLAIMS." (*See id.* at 8–11.) Nevertheless, because he includes her as a Defendant in

---

[4] Claim Three was against Defendant Plapp and will be dismissed. Although Thompson did not name Defendant D.Y. Kinsley in the caption, out of an abundance of caution, the Court directed service upon her. Defendant Kinsley has filed a separate Motion to Dismiss (ECF No. 55), and therefore any allegations against her will not be addressed in this opinion.

[5] Thompson did not place his claims on the standardized form for filing a 42 U.S.C. § 1983 complaint, but instead attached a document to the complaint form that contains all of his allegations and claims. ("Compl. Attach.," ECF No. 1–1.) The Court employs the pagination assigned to the Complaint and its attachments by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling, and omits the emphasis in the quotations from this submission.

the caption, the Court generously construes Thompson to bring the following claim against Defendant Allen:

> Claim Eight: Defendant Allen denied Thompson adequate medical care when she responded to Thompson's informal complaints and should have been aware of Plaintiff's serious medical needs.

Thompson seeks declaratory judgment and monetary damages. (*Id.* at 11.)

## III. SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). In support of their Motion for Summary Judgment, Defendants submit: (1) an affidavit of K. Phillips, Grievance Coordinator at GCC (("Phillips Aff."), ECF No. 42–1); (2) Virginia Department of Corrections ("VDOC") Operating Procedure 866.1 (ECF No. 42–1, at 10–22);[6] (3) copies of grievances submitted by Thompson (ECF No. 42–1, at 23–47); (4) an affidavit of Defendant C. Parker (("Parker Aff."), ECF No. 42–2); and the affidavit of Defendant Ray (("Ray Aff."), ECF No. 42–3).

At this stage, the Court is tasked with assessing whether Plaintiff "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)

---

[6] The Court employs the pagination assigned by the CM/ECF docketing system to the attachments to Defendant Phillips's affidavit. The Court corrects the capitalization, punctuation, and spelling, and omits the emphasis in the quotations from this submission.

(emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Thompson failed to respond to the Motion for Summary Judgment. Thompson's failure to respond to the Motion for Summary Judgment permits the Court to rely solely on the submissions of Defendants in deciding the Motion for Summary Judgment. *See Forsyth*, 19 F.3d at 1537 ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d at 915 & n. 7)).[7]

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Thompson.

---

[7] The Court notes that Thompson failed to swear under penalty of perjury to the contents of his Complaint. Instead, he stated, "I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct." (Compl. Attach. 12.) This is insufficient to constitute admissible evidence. *See Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3 n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief, as "mere pleading allegations" (quoting *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001))). Rather, the facts offered by an affidavit or a sworn statement must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). The statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Moreover, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). Thompson's Complaint runs afoul of these requirements. Moreover, the attached Declaration of David Carmichael (ECF No. 1-2), also fails to constitute admissible evidence because all of Mr. Carmicheal's statements are made "[u]pon information and belief." *See Hogge*, 2011 WL 2161100, at *2–3 n.5. No need exists to catalog the entirety of inadmissible evidence previously submitted by Thompson because he fails to direct the Court to any evidence that he wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Rule Fed. R. Civ. P. 56(c)(3) (explaining that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).

## IV. UNDISPUTED FACTS PERTAINING TO DEFENDANTS

### A. June and August 2015

On June 30, 2015, Thompson submitted an emergency grievance indicating that he was in "excruciating pain because the dentist never began work on his tooth." (Phillips Aff. ¶ 10.)[8] Dentist S. Brown responded that his pain did not constitute an emergency and instructed Thompson to submit a regular request for a dental appointment. (*Id.*) On August 24, 2015,[9] Thompson submitted a regular grievance in which he complained that he was scheduled "roughly 4 months ago" for a "dental procedure," but that he had not been seen and was "in constant pain." (ECF No. 42–1 at 23.) The regular grievance was rejected the same day by Defendant Tapp because Thompson failed to attach a receipt for an informal complaint thereby demonstrating that he had tried to resolve the matter informally. (*Id.* at 24.) On August 24, 2015, Thompson submitted an informal complaint stating that he had been told more than a month prior that he would be scheduled for a

---

[8] Defendant Phillips avers that with the exception of the attachments to his affidavit, "Thompson has not submitted any additional informal complaints or regular grievances concerning the allegations listed in his lawsuit." (Phillips Aff. ¶ 28.) The Court notes that Thompson submitted several informal complaints with his Complaint that do not appear to have been submitted in support of the Motion for Summary Judgment. As relevant, the Court includes content from those informal complaints in footnotes. To start, Thompson submitted an informal complaint on June 24, 2015. (ECF No. 1–6, at 1.) He complained that he had been waiting on dental to finish working on his teeth, and indicated that he was "having excruciating pain in the teeth that was worked on." (*Id.*) Thompson stated that "it hurts to eat hot/cold food." (*Id.*) On June 30, 2015, Defendant Allen, a dental assistant, responded that Thompson's dentist was "no longer here [and] upon reviewing [his] chart we see where you have (2) fillings that need to be fixed. We have you scheduled to treat your dental treatment needs." (*Id.*)

[9] The Court notes that the affiants use the date the grievance was received in the grievance office as the date of submission, not the date Thompson drafted the document. For the sake of consistency, the Court follows the manner in which the affiants cite to these documents.

dental appointment, that the prior dentist had worked on his infected tooth six months before, and that the tooth was getting worse. (*Id.* at 25.) Thompson indicated that he had started experiencing ear and headaches and that he "need[ed] attention A.S.A.P!!" (*Id.*) On August 26, 2015, Defendant Allen responded that Thompson was scheduled for a dental appointment to assess his treatment needs. (*Id.*)[10]

**B.    September 2015**

Apparently, dissatisfied with this response, on September 3, 2015, Thompson filed a regular grievance with his informal complaint attached. (*Id.* at 26.) Thompson complained that an "appointment isn't needed to 'determine my dental treatment needs'" but to "fix the issues that are already in my dental chart." (*Id.*) Thompson also stated that he was "supposed to be 'constantly seen' until the problems are fixed" and that he believed that "[i]t shouldn't take a long period of time in between procedures." (*Id.*) Thompson requested "[t]o be seen immediately to fix the problem with my tooth" and demanded treatment "over a course of a couple of weeks at the most." (*Id.*) The same day, Defendant Tapp rejected the grievance at intake because he had provided insufficient information about "what procedures were being performed on [his] teeth" and the "[d]ate [he] w[as] seen/told [he] would be scheduled." (*Id.* at 27.)

On September 18, 2015, Thompson submitted an informal complaint indicating that he had been seen by the dentist on September 8, 2015 for an infected tooth that he

---

[10] On August 28, 2015, Thompson submitted yet another informal complaint complaining that he had not been seen yet by the dentist and he was "in constant pain," that he couldn't sleep, and that "the pain is causing tooth, ear [and] headaches." (ECF No. 1–6, at 3.) On August 31, 2015, Defendant Allen responded that Thompson "ha[d] a scheduled appointment at the earliest appointment slot we have." (*Id.*)

claimed, "need[ed] to be removed." (*Id.* at 31.) Thompson indicated that he "was given antibiotics for the infection and was told [he] would be seen in a couple to a few days to fix the problem that wasn't fixed last time." (*Id.*) On September 22, 2015, Defendant Allen responded that Thompson was already scheduled for an appointment "to have this done. This has been addressed and it does not mean that when you stop[ped] taking your med. that you would come back the next week." (*Id.*) Defendant Allen also indicated that dental would "see you as soon as we can." (*Id.*)

On September 30, 2015, Thompson submitted a regular grievance complaining that he "recently had an appointment for an infected tooth that needs to be removed." (*Id.* at 30.) Thompson indicated that he was told that he "would be seen in a couple to a few days to fix the problem that wasn't fixed last time." (*Id.*) Thompson stated that he had been prescribed antibiotics for the infection, but he was in "constant pain" and he wanted "[t]o be seen immediately!!" (*Id.* (emphasis omitted).) On October 13, 2015, Defendant Parker responded to the grievance and stated that the dental department had verified that Thompson was already scheduled to have an extraction and ruled the grievance "UNFOUNDED." (*Id.* at 29.)

## C.    November 2015

Dissatisfied with Defendant Parker's response, Thompson appealed to Level II, the Health Services Director. (*Id.* at 29, 32.) On November 10, 2015, the Health Services Director responded that, after investigation, Thompson's grievance was "UNFOUNDED" because Thompson was "evaluated on 10/06/2015 and on 10/20/2015, and the dental staff scheduled you in the chronological order of your request in the proper

10

order of priority according to treatment classification," and that, according to the provider, Thompson's "treatment classification is not urgent." (*Id* at 28.)[11]

### D.    February and March 2016

On February 8, 2016, Thompson submitted an informal complaint indicating that he "was recently seen because of an emergency grievance that was unanswered." (*Id.* at 35.) Thompson stated that he was told he had an abscess, "that [he] needed to take Motrin [and] 'antibiotics'" and that he "would be seen in ten (10) days for an extraction." (*Id.*) Thompson complained that "10 days have come [and] gone [and] I haven't been seen." (*Id.*) On February 9, 2016, Defendant Allen responded that Thompson was "seen on 1/21/16. You were scheduled for the first available appt time which is on Feb. 11th 2016, so by the time you receive this back you will [have] been treated." (*Id.*)

On February 24, 2016, Thompson submitted a regular grievance stating that, although he had been seen by dental on January 21, 2016, and that "it 'might've' been true that I was scheduled on 'February 11, 2016,' I was never seen and here it is 'February 21' and I STILL HAVE NOT BEEN CALLED BY DENTAL. This is unsatisfactory. It needs to be fixed." (*Id.* at 33.) Thompson indicated that he was "entitled by law to have the same medical treatment as a citizen on the outside. . . .

---

[11] On November 17, 2015, Thompson submitted an Offender Request requesting an appointment with dental. (ECF No. 1–6, at 18.) In that request he indicated, "I had a procedure done (fillings) on my left side last week. Why am I not being seen for the tooth that is giving me problems? It was scheduled for extraction. . . . It's getting worse . . . . I'm in constant pain." (*Id.*) On November 19, 2015, Defendant Allen responded that Thompson was "scheduled to determine [his] dental needs." (*Id.*)

On January 15, 2016, Thompson submitted an informal complaint that was received by dental on January 21, 2016. (ECF No. 1–6, at 6.) On January 26, 2016, Defendant Allen responded that, Thompson was "seen on 1/21/16 and have been scheduled to have #31 extracted." (*Id.*)

That's the action I want taken." (*Id.*) On February 24, 2016, D.Y. Kinsley rejected his

regular grievance because it raised a different issue than Thompson had raised in his

informal complaint. (*Id.* at 34.)

On March 4, 2016, Thompson resubmitted a similar regular grievance. (*Id.* at 38.)

Thompson complained that he was seen by dental on January 21, 2016, and that dental

determined that he had an abscess and provided him Motrin and antibiotics. (*Id.*) In the

grievance, Thompson claimed that he was supposed to have an extraction within ten

days. (*Id.*) Thompson argued that his prior regular grievance should not have been

rejected because "[i]t is not different from the informal complaint. Same meaning –

different 'word play.'" (*Id.*) It is unclear what happened to this regular grievance.

However, at some point, Thompson appealed to Level I. (*Id.* at 36.) Defendant Parker

issued the Level I response on March 21, 2016, stating that Thompson was seen on

January 21, 2016 and was scheduled for the first available appointment on February 11,

2016. (*Id.*) She explained: "Further investigation reveals that per Dr. J. Brown, DDS,

the GRCC Dental Clinic was aware of your request for dental services. You were

scheduled 2/11/16 and you did not show up for the appointment. You will be

rescheduled to determine your dental treatment needs." (*Id.*) Defendant Parker found the

grievance "UNFOUNDED." (*Id.*) Thompson filed no further appeal of this claim.

On March 24, 2016, Thompson submitted an informal complaint. (*Id.* at 45.)

Thompson indicated that he had been told that he was scheduled to see the dentist on

February 11, 2016, and that he was never called for the appointment. (*Id.*) Thompson

stated that he had requested a copy of his dental record which stated that he "was a 'no

show' for the 11th of February." (*Id.*) Thompson indicated that he "never signed a refusal form" and was "in constant pain." (*Id.*) On April 1, 2016, Dr. Brown, a dentist, responded: "On 3/24/16, Mr. Thompson was seen and referred to oral surgery. He was put on an ABX and pain medication." (*Id.*)[12] Dissatisfied with Dr. Brown's response, on April 13, 2016, Thompson submitted a regular grievance providing the same summary as in his informal complaint. (*Id.* at 47.) Thompson requested "[t]o be correctly notified of appointments" and "[t]o 'fix' the cause of my pain in the allotted time for the treatment of an abscess." (*Id.*)

### E.    May and June 2016

On May 5, 2016, Defendant Parker issued the Level I response. (*Id.* at 43.) Defendant Parker stated that Thompson had been seen by the dentist on March 24, 2016 and was prescribed medication and was scheduled for oral surgery. (*Id.* at 42.) Defendant Parker further explained that Thompson was "seen on 4/14/16 for pain management and are scheduled for oral surgery." (*Id.*) Defendant Parker found the grievance unfounded. (*Id.*) Thompson appealed this response to Level II. (*Id.* at 41, 43.) On June 5, 2016, the Health Services Director responded that Thompson "ha[d] been seen, evaluated and treated on 24MAR2016 and 4MAY2016. The dental staff has followed policy as stated on OP 720.6 in scheduling your dental appointment, and

---

[12] Thompson submitted another informal complaint on April 11, 2016 complaining that he had been prescribed antibiotics twice, that an "ABSCESS IS SERIOUS" and that he wanted his problems fixed "immediately." (ECF No. 1–6, at 12.) On April 13, 2016, Dr. Brown responded that Thompson was "being scheduled for the oral surgeon." (*Id.*)

follow-up care to previously performed treatment. This grievance is unfounded." (*Id.* at 41; *see* Phillips Aff. ¶ 27.)

Defendant Parker, as the former Assistant Warden at GCC, and Defendant Ray, as the Health Services Grievance Coordinator, are not medical doctors or dentists. (Parker Aff. ¶ 4; Ray Aff. ¶ 4.) Defendants Parker and Ray aver that they do not make medical decisions regarding the diagnosis or treatment of an offender's medical needs and that those medical judgments "always rest with qualified medical personnel." (Parker Aff. ¶ 4; Ray Aff. ¶ 4.) Defendant Parker and Ray also explain that they do "not intervene in medical decisions." (*Id.*) Further, as Health Services Grievance Coordinator, Defendant Ray "do[es] not issue responses to Level II grievances [but] assist[s] the Health Services Director in preparing the written response and then enter[s] it into the VDOC system." (Ray Aff. ¶ 5.) Defendant Ray explains that, "[t]his is my only capacity in handling the Level II responses." (*Id.*)

## V. ANALYSIS

To survive a motion for summary judgment on an Eighth Amendment claim, Thompson must demonstrate that the Defendants acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

In the context of delayed medical care, in addition to demonstrating that a medical need was objectively serious, a plaintiff must also establish that the delay in the provision of medical care "resulted in substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs., Inc.*, No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. Feb. 9, 2012) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).

Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, "[i]t may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody . . . ." *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

Defendant Allen, a dental assistant, is the only medical provider that remains and has moved for summary judgment. However, Thompson alleges that each of the Defendants denied him adequate medical care solely arising from their involvement in

the grievance process and for failing to intervene in his dental care. In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright*, 766 F.2d at 850 (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Furthermore, "[t]he doctrine of *respondeat superior* has no application" under § 1983. *Id.* (citing *Vinnedge*, 550 F.2d at 928). Thompson must demonstrate that each defendant had "personal knowledge of and involvement" in the alleged constitutional deprivation to establish liability under § 1983. *Id.* at 850. Thus, to the extent that Thompson alleges that the Defendants had liability based upon some supervisory role, he fails to state a claim. *Vinnedge,* 550 F.2d at 928.

In addition,

> [i]f a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Iko*, 535 F.3d at 242 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). As discussed below, Thompson fails to demonstrate that Defendants Ray, Whitehead, Parker and Tapp were aware that they exposed Thompson to an excessive risk by relying on the medical opinions of the dental staff at GCC.

## A.    Defendants Ray and Whitehead

In Claim Four, Thompson alleges that Defendant Whitehead "generated the report for the grievance concerning the infected tooth" and that she "ha[d] to investigate, but didn't investigate thoroughly." (Compl. Attach. 9–10.) Thompson fails to direct the Court to any evidence demonstrating that Defendant Whitehead personally participated in the deprivation of Thompson's Eighth Amendment rights. *See Wright*, 766 F.2d at 850. After searching the record, the Court finds that the only instance where Defendant Whitehead's name appears is on the top of a Level I response to one of Thompson's grievances. (*See* ECF No. 42–1, at 29.) The Level I response indicates: "Report generated by Whitehead, K L." (*Id.*) However, Defendants fail to provide any evidence or supporting argument addressing Defendant Whitehead's liability. Specifically, Defendants fail to provide any evidence explaining what generating a report for a grievance entails, or why merely running the report for a Level I response that was written by Defendant Parker, absolves her of any liability. Nevertheless, a review of the report Defendant Whitehead generated reveals no constitutional violation.

While an inmate's grievances or letters to prison administrators may establish a basis for § 1983 liability, the plaintiff must allege facts that suggest "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety." *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer*, 511 U.S. at 837). Thompson must demonstrate that because of the purported grievances, Defendants "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy

it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

The report generated by Defendant Whitehead establishes that an investigation was indeed conducted, and it revealed that Thompson was already scheduled for dental services, despite his complaints to the contrary. (*See* ECF No. 42–1, at 29.) Thus, Thompson fails to demonstrate Defendant Whitehead knew of a constitutional violation and simply ignored it or somehow personally participated in the violation. *Vance*, 97 F.3d at 994. Moreover, Thompson fails to establish that Defendant Whitehead violated his Eighth Amendment rights by failing to investigate his complaints about his dental care when it was evident that he was being treated by the dental department. "If a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." *Iko*, 535 F.3d at 242 (omission in original) (quoting *Spruill*, 372 F.3d at 236). Accordingly, Claim Four will be dismissed.

In Claim Six, Thompson contends that "Defendant H.C. Ray signed the Level II response to the grievance submitted as unfounded," and that she "should have been aware of the serious medical need Plaintiff presented during the grievance process." (Compl. Attach. 10.) Thompson incorrectly asserts that Defendant Ray found his Level II grievance appeal unfounded. Rather, it appears that Defendant Ray generated the report for the Level II response to Thompson's grievance appeal, and that the Health Services Director, Fred Schilling, actually responded. (ECF No. 42–1, at 28; Phillips Aff. ¶ 19.) Defendant Ray swears that she "do[es] not issue responses to Level II grievances. I assist

the Health Services Director in preparing responses and then enter it into the VDOC system." (Ray Aff. ¶ 5.) Defendants do not explain how assisting with the preparation of responses and entering such responses into the system would absolve Defendant Ray of personal responsibility for the content of those responses. However, Thompson fails to demonstrate that Defendant Ray violated his constitutional rights.

First, Thompson fails to establish that Defendant Ray knew of a constitutional violation through the content of his appeal and ignored it, or personally participated in the violation. *Vance*, 97 F.3d at 994. In the Level II response that Defendant Ray prepared and entered into the system, Fred Schilling responded that Thompson's complaint that he "ha[d] not been seen by dental" had been investigated, and the record revealed that Thompson had been seen by dental twice, that Thompson had been scheduled "in the proper order of priority according to treatment classification," and that the dental department classified Thompson's dental care as "not urgent." (ECF No. 42–1, at 28.) Second, Defendant Ray explains that she has no involvement in an inmate's medical care, does not intervene in medical decisions, and relies on the professional judgment of the medical and dental staff. (Ray Aff. ¶ 4.) Thompson fails to demonstrate that Defendant Ray violated his Eighth Amendment rights. Defendant Ray had no involvement in Thompson's medical care and could rely on the dental department's course of treatment and classification of Thompson's needs. *Iko*, 535 F.3d at 242. Accordingly, Claim Six will be dismissed.

## B.     Defendants Tapp and Parker

In Claim Seven, Thompson contends that "Defendant Tapp signed the grievance

Plaintiff submitted" and that made her "aware of the serious medical need," which

violated his Eighth Amendment rights. (Compl. Attach. 10.)  Similarly, in Claim Five,

Thompson faults Defendant Parker for "sign[ing] the Level I response to the grievance

Plaintiff submitted as unfounded" when she "was aware of the serious medical need the

Plaintiff had" and she "fail[ed] to investigate properly." (*Id.*)  Defendant Parker swears

that she, as the former Assistant Warden, had no involvement in Thompson's medical

care or any decisions about how he was to be treated and that she relies on the medical

department to treat inmate's medical needs.  (Parker Aff. ¶ 4.)  Similarly, Thompson puts

forth no evidence that Defendant Tapp, as Ombudsman, had any personal involvement in

any facet of his medical care.

Defendant Tapp rejected two grievances filed by Thompson because he failed to

follow grievance procedures.  In his first rejected grievance, Thompson failed to provide

evidence that he had attempted to resolve the matter informally by attaching the

appropriate informal complaint or "receipts".  (ECF No. 42–1, at 23–24.)  In his second

rejected grievance, Thompson failed to provide sufficient details about why he needed an

appointment with dental and what problems he was experiencing.  (ECF No. 42–1, at 26–

27.)  Thompson fails to demonstrate that Defendant Tapp was aware of a constitutional

violation and failed to remedy it or personally participated in the violation. *Vance*, 97

F.3d at 994.  Moreover, in both of the grievances filed by Thompson, it was evident that

Thompson had been seen and was being treated by the dental department.  (ECF No. 42–

1, at 23–24, 26–27.) Defendant Tapp would be justified in her belief that the dental department was appropriately handling Thompson's dental needs. *Iko*, 535 F.3d at 242.

Similarly, Defendant Parker issued three Level I responses to Thompson's grievance appeals. (Parker Aff. ¶¶ 7, 9, 11.) In each, Defendant Parker found the grievance to be unfounded because the dental department was treating Thompson. Defendant Parker found Thompson's first grievance unfounded because the dental department had scheduled Thompson for an extraction. (*Id.* ¶ 7.) Defendant Parker found Thompson's second grievance unfounded because the dental department had Thompson scheduled for an appointment, but Thompson failed to show up at the scheduled time. (*Id.* ¶ 9.) Defendant Parker found Thompson's third grievance unfounded because Thompson had been provided medication for pain management and scheduled for oral surgery. (*Id.* ¶ 11.) Thompson fails to demonstrate that Defendant Parker was aware of a constitutional violation and failed to remedy it or personally participated in the violation. *Vance*, 97 F.3d at 994. To the contrary, the record establishes that Thompson was under the care of the dental department, and that Defendant Parker would be justified in her belief that he was receiving appropriate care. *Iko*, 535 F.3d at 242.

Thompson fails to demonstrate that Defendants Tapp or Parker knew that they exposed Thompson to an excessive risk of harm by relying on the opinions of the dental department. Thus, Thompson fails to establish that Defendants Tapp or Parker acted with deliberate indifference to his medical needs. Claims Five and Seven will be dismissed.

## C. Defendant Allen

As previously noted, Defendant Allen, a dental assistant, is the sole medical professional remaining in the action. Thompson provided no allegations against her in the "LEGAL CLAIMS" section of his Complaint. In his Complaint, Thompson simply recounted that Defendant Allen responded to several of Thompson's informal complaints and that appears to be the sum of her involvement. It is unclear why Thompson believes that Defendant Allen is personally liable. In each instance, the record establishes that Defendant Allen responded to Thompson's informal complaints noting that Thompson had a scheduled appointment with the dental department or had been seen and treated by the dental department recently. (*See* ECF No. 42-1, at 25, 31, and 35.)[13] Thompson fails to provide any facts establishing that Defendant Allen knew of and disregarded an excessive risk to Thompson's health in responding to his informal complaints. *See Farmer*, 511 U.S. at 837. To the extent that Thompson suggests that Defendant Allen should have ensured he was scheduled for dental appointments sooner, Thompson fails to demonstrate that Defendant Allen subjectively recognized that further acceleration of Thompson's care was necessary to eliminate a substantial risk of harm. *Parrish ex rel. Lee*, 372 F.3d at 303. Therefore, Thompson fails to show that Defendant Allen acted

---

[13] Additionally, the informal complaints attached to Thompson's unsworn Complaint reflect the same. (*See* ECF No. 1–6, at 1, 3, 6, 18.).

with deliberate indifference to his medical needs.[14] Accordingly, Claim Eight will be dismissed.

## VI.     CONCLUSION

Thompson's claims against Defendant Plapp will be dismissed without prejudice. Defendants' Motion for Summary Judgment (ECF No. 41) will be granted. Claim Three will be dismissed without prejudice. Claims Four through Eight are dismissed with prejudice.

An appropriate Order shall issue.

/s/

HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: **March 29, 2018**
Richmond, Virginia

---

[14] In assessing a claim of deliberate indifference, the Court must consider the totality of the medical care provided, rather than simply what additional treatment the inmate was denied. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (citing *Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999)). From the record it appears that Thompson received a great deal of dental care including many appointments, pain medication, antibiotics, and fillings. Dental staff continuously evaluated Thompson's dental condition. Although, Thompson may have desired different treatment on a different schedule, Thompson simply lacks entitlement to the medical care of his choosing. *See Wright*, 766 F.2d at 849 (citation omitted); *Hudson*, 503 U.S. at 9 (1992) (citation omitted).

24